\* IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

UNITED STATES OF AMERICA     PLAINTIFF

APPEAL NUMBER: 13-14999-B
V.    CASE NO. 12-CR-00240-JDW-MAP-1

AMADOR MENA TRELLEZ     DEFENDANT

(ARLY PINILLA-CESPEDES, CO-DEFENDANT)

BRIEF IN SUPPORT OF MOTION TO STRIKE REPORT AND RECOMMENDATION [DOCKET #94], (ALTERNATIVELY, OBJECTIONS TO REPORT AND RECOMMENDATIONS); TO WITHDRAW THE MOTION TO PROCEED IN FORMA PAUPERIS; AND TO CORRECT ERRONEOUS STATEMENT IN DOCKET # 92

Comes now Defendant Amador Mena-Trellez (Defendant Mena) and for his brief in support of the above described motion states:

Magistrate Pizzo has issued a Report and Recommendation that Defendant Mena's Motion for Leave to Appeal In Forma Pauperis, [Docket #86] a Motion for Show Cause Order Against Luis Casuso, [Docket 90] and a Motion for Determination as to Validity of Appeal [Docket 92] all "be denied."

1

By the admission of Magistrate Pizzo, the Court has not referred Docket numbers 90 and 92 to any magistrate. Furthermore, Magistrate Pizzo demonstrates bias by the very act of entering a recommendation on a matter not referred to him; on the same day those motions were entered. (The filing date was the previous business day.) The issues in the motions upon which he expresses an opinion (or more accurately, evades) are not joined, and the pleadings are not ripe for recommendations or decision by anyone.

Magistrates do not have inherent, unlimited power in a felony case. Where a magistrate acts without jurisdiction, his judgment may be unsustainable even in the face of the failure to object by a litigant. See e.g. Mendes Junior Intl. Co. v. M/V Sokai Maru, 978 F2d 920 (5th Cir. 1992). Defendant Mena's liberty is at stake. He does not agree to any implied waiver of any procedural requirement for the issuance of any order, process, or other official act that may be adverse to him. He respectfully requests and demands full respect for all his statutory and constitutional due process and procedural rights.

Document 90 contains very serious allegations about the misconduct of Attorney Luis Casuso. It alleges that Casuso took money for the filing of a pleading that he promised would effectuate the release of Defendant Mena, showed the pleading to Defendant Mena, and THEN DIDN'T FILE THE PLEADING!

This is fraud and theft of the worst sort. Mr. Casuso knew that he was selling Defendant Mena down the river. He knew that Mena would lose some 10 years of his life, because of Mr. Casuso's lies. He wasn't satisfied to cheat Defendant Mena out of money, or to merely cheat him out of his liberty. He chose to cheat him out of BOTH.

Mr. Casuso knew the pleading was a winner. It was a winner because Defendant Mena's facts were on "all fours" with the facts of US v. Bellaizac-Hurtado, 700 F3d 1245 (11th Cir., decided 11-6-2012). He made Defendant Mena believe this pleading was filed because he showed the pleading to Defendant Mena, took a total of $8,000 from Defendant Mena and his co-defendant Arly Pinilla-Cespedes (Defendant Pinilla), and told them the pleading had been filed.

Then Mr. Casuso told Defendant Mena that the motion was summarily denied without response and without hearing. That was a bald faced lie, but Defendant Mena had no way to know it. He was in prison and didn't have access to PACER. He does not speak English and does not understand the American legal system. He is a vulnerable client, and Mr. Casuso knew it. Mr. Casuso knew he could take advantage of Defendant Mena.

Recommending the denial of these two motions is a MASSIVE gift both to the government and to Mr. Casuso. Start with the government and consider the facts. They are far from innocent in this fraud.

The government knew that they had made a deal to send Defendant Mena home, a free man, in exchange for a plea. It makes little difference that he made this plea in the Southern District of Florida. They government knew about the deal, they knew their obligations under the deal. There is only one "United States government." A plea deal is binding on the government, NOT merely on one US Attorney's office. The government knew they didn't have a legal right to prosecute Defendant Mena in the Middle District of Florida. They knew that venue, a legal defense of constitutional dimensions, was altogether lacking. The government had already prosecuted him on an indictment alleging the same offense, in the Southern District. It now appears that the plea deal in the Southern District of Florida was made in bad faith, nothing more than one part of a larger deception.

Who deprived Defendant Mena of resources so he could monitor the work of his lawyer? It was none other than his adversary the US DOJ. Likewise, the "diesel therapy" given to Defendant Mena was controlled by the same organization that breached its contract and put Defendant Mena in prison on a long, yet fraudulently obtained, federal criminal sentence. That same organization now deprives

Defendant Mena of the property necessary to effectively litigate his meritorious claims in this court and other courts. Then as now, these deprivations impaired and impeded Defendant Mena in detecting and remedying the fraud perpetrated on him by Mr. Casuso.

Magistrate Pizzo's recommendation is an even bigger gift to Mr. Casuso. This unauthorized recommendation signals to Casuso - indeed to the whole world - that the bar of the Middle District of Florida is completely unconcerned about the most egregious frauds, so long as they're committed against vulnerable foreigners who don't know the language, law, and customs of this country. If that's not the case, the District Court should firmly take the reins and explicitly disavow any support whatsoever for any dishonesty or sharp dealing, whether by the government or by retained defense counsel.

Casuso extracted $15,000 from Defendant Mena, to stand next to him as he pleaded guilty in the case in the Southern District of Florida. Mr. Casuso told Defendant Mena that he really needed to pay this fee, because he needed a skilled and experienced lawyer such as Mr. Casuso, to make sure he got the benefit of his bargain, and went home as promised.

No such luck. Mr. Casuso was lying through his teeth. Not only would he fail to raise and vigorously defend Defendant's rights under the plea deal, his motion on

venue was basically a "lick and a promise." Mr. Casuso knew that venue didn't lie in the Middle District. He knew that double jeopardy prohibited retrial on the dismissed charges. Yet it appears that he deliberately rushed Defendant Mena into a premature plea deal, in the Middle District case, to head off a ruling from the District Court on the merits of the venue motion.

If this court conducts a hearing, this is what it will discover. Mr. Casuso, after taking $15,000 in the Southern District of Florida case, for promises he never meant to keep, aggressively demanded fees in the Middle District of Florida case. He shamelessly told family and friends paying his fees that it would be hard for him to get more money IF HE GOT DEFENDANT MENA RELEASED FROM JAIL! In other words, if he did what he said he would do for the $15,000, that would mean the end of his extortion racket. Defendant Mena doesn't expect a lawyer to work for any paltry sum. But Mr. Casuso demanded large sums and then refused to do the promised work, or, for that matter, to do any work that would come close to justifying the fees paid. It is in fact a violation of legal ethics to demand unreasonable fees.

Magistrate Pizzo suggests that he isn't sure whether or not Defendant Mena is filing a motion under 28 USC 2255. He is NOT attempting to file any such motion

at this time. If such motion is filed, it will be identified as such, and it will follow the form and the rules for such motions.

Why can't Mr. Casuso respond to these allegations? If they're false, why can't he say they're false? And if they're true, will the Court sit idly by and allow such gross dishonesty to mar the integrity and public perception of the bar of the Middle District of Florida?

Why would Magistrate Pizzo unilaterally and prematurely recommend that the Court "run interference" for both the US Attorney and Attorney Casuso? This sort of behavior exacts a political price - it is by no means free. The only logical reason for excusing the US Attorney and Mr. Casuso from responding to these pleadings is a calculated assessment and decision that the POLITICAL BENEFIT of "running interference" for a dishonest lawyer is less than the POLITICAL COST of allowing the litigation to proceed according to the rules and legal precedents controlling such cases.

Magistrate Pizzo's Report and Recommendation provides the customary notice that the failure to timely file written objections bars the aggrieved party from attacking the factual findings on appeal. But Magistrate Pizzo hasn't made factual findings.

In fact, Magistrate Pizzo has ignored serious, direct, factual allegations of ethical violations by BOTH the US Attorney and Luis Casuso, both of whom are lawyers. Factual findings, even if they are wrong, have value to Defendant Mena. Erroneous factual findings by Magistrate Pizzo aren't the end of the road for Defendant Mena. He can object, not only to the substantive factual findings, but also to the procedure by which those findings were made. As a general rule, falsehoods contain within themselves the seeds of their own destruction.

Any lawyer permitted to practice in a court is an "officer of the court." A lawyer has a duty to tell the truth to his client. A lawyer has a duty of loyalty to his client. A lawyer has a duty NOT to lie to his client, to opposing counsel, or to the court.

Everyone makes mistakes - some more, some less. A mistake is what the offending party corrects when the mistake is brought to their attention. An easy example is the allegation that Defendant Mena was a teenager when he was arrested. That was a false statement, but it was made without bad intent, and it was corrected as soon as reasonably possible.

Based upon the Defendant Mena's verified allegations, Mr. Casuso has at the very least lied to his own paying client and to the Court. The Court should command Mr. Casuso, and the government, to respond in full, to the allegations made.

If the government didn't intentionally set up Defendant Mena for a "bait and switch" trap, to give him not one but two lawless convictions, why don't they correct their error? If they meant to keep their solemn word of honor, given in writing in the Southern District case, why are they now silent? The government's behavior suggests calculated, strategic, official corruption -- not an innocent mistake. Magistrate Pizzo has given them a massive gift - but they certainly don't have to accept it.

These allegations are NOT improper for a pleading filed at this particular time. Defendant in his Motion For Determination of the Validity of the Appeal cited Roe v. Flores-Ortega, 528 US 470 (2000). This case sets forth the matters that should be considered and decided in cases of an attempt to perfect an appeal out of time. Magistrate Pizzo can scarcely plead ignorance of the legal theories relied upon by Defendant Mena. Yet Magistrate Pizzo not only failed to acknowledge and analyze controlling law concerning the determination of relevant legal questions applicable in this case, he also recommended that the Court FORECLOSE ANY FACT FINDING WHATSOEVER!!

It cannot be denied that the pleadings allege attorney misconduct, on the part of Mr. Casuso as well as the attorney for the government. The question then arises, who has the duty to correct the wrong? Is it the duty of the injured litigant?

The answer to that question is a resounding "no." The duty of remedying fraud and perjury falls squarely upon the guilty party. The duty of correcting the fraud and perjury practiced upon Defendant Mena falls upon Mr. Casuso and those government attorneys involved in facilitating same.

The New York Bar Association, in Professional Ethics Formal Opinion 2013-2, determined that under Rule 3.3, the duties of an attorney end when a reasonable remedy is no longer possible. The opinion said that lawyers should remonstrate with their clients and seek co-operation in informing the court and seeking a just remedy. This procedure was probably assumed to be most likely to involve a client who was guilty of perjury, of which the lawyer was not previously aware. The object of the rule normally involves a lawyer persuading his own client to give up ill-gotten gains.

You may wonder about the citation to a decision from the New York Bar. I do that because my adversary the US Department of Justice, through its subsidiary the Federal Bureau of Prisons (DOJ-FBOP) refuses to allow me to have access to the legal authorities most critical to my case. Oscar Stilley had a subscription to Lexis-Nexis, with a laptop and wireless access to the internet, which he would use for me if he could. Yet the DOJ-FBOP refuses to allow Stilley to use this equipment, for his own appeal or for my appeal. That's why Defendant Mena cites to authority from another jurisdiction, same being persuasive as opposed to binding. Presumably, the attorney professional conduct rules applicable in the Middle District of Florida are similar.

Consider this question. In an extradition proceeding in a foreign court, suppose the litigant opposes extradition on the ground that US lawyers (officers of the court) who lie to their clients about pleadings, proceedings, and rulings from the presiding judge, are not only unpunished but also shielded from investigation and public exposure.

What will be the plea of the US government, to such serious charges of its own independent misconduct? This nation claims to wear the "white hat" of the world. This nation claims to be a nation of laws and not men. This nation claims equality before the law, for rich or poor, weak or strong, great or small. This nation

proclaims such principles as "innocent until proven guilty" and "it is better for 19 guilty persons to go free than for 1 innocent person to be convicted." This nation was founded on such basic precepts as "let no more be heard of confidence in men, but bind him down with the chains of the constitution."

If Magistrate Pizzo's recommendation is adopted, the answer to a foreign sovereign, or to foreign nationals, asking questions about the integrity of US courts must necessarily be shameful, or false, or both.

Turn the equation around. Would this Court extradite a US citizen on charges, not mala in se (inherently evil), to a nation in which the legal and judicial system is well known to be guilty of such violations of due process, AS DEFINED BY THAT NATION'S WRITTEN LAWS? Would a judge who granted extradition on such terms have clean hands? Would such a ruling contribute to the public respect for the bench and the bar and the overall legal system of the nation?

Magistrate Pizzo claims that the relief sought in Defendant Mena's pleadings is "vague." This observation is made without the benefit of any responses and without any reply. This observation overlooks the time honored maxim that "the fundamental essence of due process is the right to be heard in a reasonable time

and a reasonable manner."  Can anyone logically argue that Magistrate Pizzo's acts facilitate Defendant Mena's legal right to be heard in a reasonable time and a reasonable manner?

If the government can't understand the prayers for relief, they can raise the issue. If they think that some part of the relief requested is vague, they can set forth the government's official position with respect to that particular item, thus joining and potentially narrowing the issues.  The government has asked questions of Defendant Mena, in person, recently and at not insubstantial cost to the taxpayers. They government is not so deluded as to think that the issues raised by Defendant Mena are inconsequential.  If the government has questions about the litigation, including but not limited to relief sought, the government can easily engage Defendant Mena in discussions.

Mr. Casuso is former counsel of record for Defendant Mena, accused of misconduct, against which he has a legal and equitable right to defend.  It makes sense to allow the parties litigant to join and develop the issues, and THEN to make findings, report and recommendation, and such legal rulings as may be appropriate.

Certain observations might be made about the procedural possibilities. In US v. Rivas, 450 Fed. Appx. 420 (5th Cir. 2011) the 11th Circuit reversed and remanded for re-entry of a judgment of conviction, whereupon Mr. Rivas would be able to file a timely notice of appeal. The procedure leading up to that decision involved a filing under 28 USC 2255, which admittedly is not involved in this case at the present time.

However, if the Circuit Court can order such a remedy, it makes no sense that a district court could not do the same thing on its own. Doubtless such a procedure has been utilized by district courts on many occasions, when the interests of justice so require.

If the District Court re-enters the judgment of conviction, then Defendant Mena has the opportunity to file a motion for new trial. However, it makes sense to determine the foundational facts and legal questions, to the extent possible, before the entry of an order that amounts to a "triggering event." Furthermore, it seems to the defendant that the court could re-enter the judgment of conviction, then sua sponte grant a judgment as a matter of law, or for a new trial, directing that further proceedings be held. After all, the denial of the venue motion as "moot" was occasioned by Casuso's fraud.

The best procedural approach will likely become clearer as the answers to the questions raised by Defendant Mena are answered. If the District Court sees that Mr. Casuso is in fact guilty of effectively "selling" a winning pleading, then failing to file it, the District Court might well re-enter judgment, and immediately set the conviction aside, and grant judgment as a matter of law. Both the venue motion and the Bellaizac-Hurtado motion provide unassailable legal grounds for dismissing the indictment.

Subject matter jurisdiction may be raised at any time. US v. Shaw, 655 F2d 168, (9th Cir. 1980). The Bellaizac-Hurtado panel included at least one judge who concluded that US courts lack jurisdiction over alleged drug trafficking offenses committed within the territorial jurisdiction of another sovereign. Drug trafficking does not give rise to universal jurisdiction. Absent universal jurisdiction, there is no other theory identified by anyone that would potentially vest worldwide subject matter jurisdiction to US federal courts, for alleged drug trafficking offenses.

The facts of this case mirror the facts of Bellaizac-Hurtado in every material respect. Courts generally avoid constitutional and jurisdictional questions when it is possible to dispose of a case on less significant grounds. The controlling rule of Bellaizac-Hurtado provides Defendant Mena with complete relief. This court has the power, and a clear procedural path, to dispose of this case on those grounds.

But one can be certain that Defendant Mena will raise and vigorously argue a challenge to subject matter jurisdiction in an appeal, 2255 motion, or other suitable pleading, in which such a claim might reasonably be made, considering procedural limitations. Defendant Mena has lost his liberty. Every day of his life lost to prison amounts to damage, injury, and suffering for himself and others. He has every reason to raise and vigorously pursue jurisdictional challenges in such reasonable and suitable venues as may be presented to him, from this point forward.

For all the reasons stated, Defendant Mena respectfully requests that the District Court grant the relief sought in the motion accompanying this brief.

VERIFICATION

Pursuant to applicable federal law, I hereby declare under penalty of perjury that the facts stated in the foregoing pleading are true.

\*

\*

/s/ Amador Mena-Trellez

By:_____       _____

Amador Mena Trellez, 97978-004        Date
FCC Forrest City Low
P.O. Box 9000
Forrest City, AR 72336-9000

## CERTIFICATE OF SERVICE

I hereby certify, by my signature above, that I in good faith believe that this pleading will be served by CM/ECF upon my own lawyer, Louis Casuso, the lawyer for Mr. Pinilla-Cespedes, and James C. Preston, Jr., counsel for the government, at their registered email addresses, upon the filing of this document.

17